IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-661-FL

ROXANNA MARTIN AANENSON, )
 )
       Plaintiff/Claimant, )
 )
       v. ) **MEMORANDUM AND**
 ) **RECOMMENDATION**
 )
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
 )
       Defendant. )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-15, DE-20] pursuant to Fed. R. Civ. P. 12(c). Claimant Roxanna Martin Aanenson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on April 25, 2014, and subsequently filed a claim for disabled widow's benefits[1] on November 7, 2014 that was

---

[1] In order to obtain widow's insurance benefits, a claimant must meet both non-disability and disability requirements pursuant to 42 U.S.C. § 402(e). The ALJ determined Claimant met the non-disability requirements, but was not disabled. (R. 15, 28).

consolidated with the initial claims, in each alleging disability beginning March 16, 2014. (R. 236–52). The claims were denied initially and upon reconsideration. (R. 73–152). A hearing before the Administrative Law Judge ("ALJ") was held on November 16, 2015, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 35–72). On December 11, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 9–33). On May 27, 2016, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then commenced the instant action, seeking judicial review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial

evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. (R. 15). Next, the ALJ determined Claimant had the severe impairments of depression, bipolar disorder, anxiety disorder/panic attacks, posttraumatic stress disorder ("PTSD"), degenerative disc disease, headaches, hypertension, and obesity, as well as the non-severe impairments of gastroesophageal reflux disease ("GERD"), bursitis, hyperlipidemia, hyperthyroidism, osteoarthritis, and status post-right knee replacement in 2009. (R. 15–16). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16–18). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate difficulties in her activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation of an extended duration. (R. 17).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a restricted range of light work[2] with the following limitations:

> [S]he must be allowed to stand for 1–3 minutes after sitting for 1 hour and sit for 5 minutes after standing and/or walking for 30 minutes. She can frequently push/pull and operate foot controls with the right lower extremity; frequently push/pull and operate hand controls with both upper extremities; frequently climb ramps or stairs;

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

occasionally climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, or crawl; and frequently handle objects and finger bilaterally. She can have no exposure to unprotected heights, hazardous machinery or moving mechanical parts. The claimant's work is limited to simple, routine and repetitive tasks but not at a production rate pace; simple work-related decisions; few, if any, changes in the routine work setting; and occasional interaction with the public, coworkers and supervisors. The claimant would be off task no more than 10% of the time in an 8-hour workday, in addition to normal breaks (with normal breaks defined as a 15 minute morning and afternoon break and a 30 minute lunch break).

(R. 18). In making this assessment, the ALJ found Claimant's statements about her limitations partially credible. (R. 19). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a restaurant server. (R. 26). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 27).

## V. DISCUSSION

### A. The ALJ's RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-

5

severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

### 1. Credibility

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the

extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564–65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595–96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011) (concluding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (Apr. 26, 2011).

Claimant contends her testimony demonstrates she is unable to work due to chronic severe pain and psychiatric symptoms. Pl.'s Mem. [DE-16] at 7–8. Claimant notes that she left her last job due to stress, difficulty interacting with her supervisor, and excessive absenteeism due to her medical problems, which resulted in write-ups and termination warnings. *Id.* at 7 (citing (R. 47, 57, 60–61)). She was unable to look for other work due to stress-induced panic attacks, which prevented her from being around other people except her father and therapist, and she stopped participating in her past hobbies and social activities. *Id.* (citing (R. 48, 58–60, 62)). Claimant's severe depression prevents her from leaving the house two to three days a week, and she is unable to get out of bed, dress, or

7

shower. *Id.* at 8 (citing (R. 48, 52–53, 57, 60)). Her back pain prevents her from performing household activities, because after even 15 minutes of activity she experiences severe pain, and she experiences daily stress-induced tension headaches that are severe approximately twice a month. *Id.* (citing (R. 53–55)). Claimant also has difficulty concentrating and remembering things. She left school in ninth grade because she was unable to understand the material and has been unable to obtain a GED despite multiple attempts. *Id.* (citing (R. 43)). Claimant contends the medical records document her symptoms and corroborate her testimony. *Id.* (citing (R. 344–47, 362, 380, 382, 423, 428)).[3]

The ALJ considered Claimant's testimony in formulating the RFC, recounting each of the points noted by Claimant, but found she was "not entirely credible." (R. 19). With respect to Claimant's back pain, the ALJ found that the evidence consistently noted her pain was relieved with Oxycodone every four to six hours, she was encouraged to stretch to relieve her pain, and she continued to be treated with Oxycodone, which adequately addressed her pain. (R. 23); *see also* (R. 19–23) (ALJ's discussion of medical records); (R. 357) (Oct. 23, 2014 treatment note indicating pain was attributable to physical work, but pain control was good with Oxycodone every four hours, she had "slightly limited" mobility due to pain, and stretching was recommended); (R. 425) (Nov. 2014 treatment note indicating pain was 9/10 without medication, but 4/10 with medication, and Claimant was able to perform all activities of daily living); (R. 498–99) (July 2015 treatment note indicating back pain was unchanged, stable, and eased with medications, and Claimant would start to wean off pain medication slowly, look for insurance options so she could go to pain management, and

---

[3] Claimant also cited a treatment note at page 432, but it is a duplicate of the previously cited August 25, 2014 treatment note at page 362.

8

discussed lifestyle measures to help with pain). The ALJ also noted that Claimant maintained normal strength, tone, coordination, and gait and station, and no brace, cane, or surgery was recommended. (R. 23). The ALJ indicated that the RFC accounted for Claimant's postural limitations shown on examination and her complaints of back and leg pain. (R. 23). With respect to Claimant's headaches, the ALJ noted that she complained of headaches when her blood pressure was high or related to stress, but that her blood pressure was controlled when she took her hypertension medication and her headaches were relieved by over the counter medication and did not "derail her day." (R. 23, 364, 413–14). The ALJ also noted that Claimant responded well to medication and therapy for her anxiety, mood, and concentration problems. (R. 24); *see also* (R. 19–23) (ALJ's discussion of medical records); (R. 357–58) (Oct. & Sept. 2014 treatment notes indicating anxiety is well-controlled with Klonopin); (R. 425) (Nov. 2014 treatment note indicating her anxiety was unchanged, clonazepam (generic Klonopin) was working well, and she was excited to be dating again); (R. 498) (July 2015 treatment note indicating Claimant was "doing well and without complaints" regarding her depression, doing well in therapy, and depression screening was negative for lack of interest or pleasure in doing things and feelings of depression and hopelessness); (R. 470) (Aug. 2015 psychological treatment note indicating Claimant was feeling better but having difficulty concentrating, thought she had ADHD, and was started on Adderal); (R. 527) (Sept. 2015 psychological treatment note indicating Claimant's medications were "working really well" and she "has energy, is able to concentrate, doesn't feel jittery, mood is good, really good. Doesn't need Klonopin anymore. Feels productive."). "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

Claimant's subjective complaints reflected in the treatment notes she cites, as well as those

referenced above, do not support the extreme limitations she reported at the administrative hearing. While Claimant consistently reported back pain to her treatment providers, she also indicated it was managed to a tolerable level with medication, that she remained functional in her activities of daily living, her mobility was slightly limited, and her anxiety, though exacerbated at times by family stressors, was well-controlled with medication. (R. 362, 380, 382, 423, 428). Although Claimant's subjective complaints to the consultative examiner on October 15, 2015 are more consistent with her hearing testimony, that same month she explained at her therapy visit that she had recently experienced conflict with her family members that resulted in her being arrested and her medications were working but the benefit was negated when dealing with her family. (R. 344–47, 563). The ALJ appropriately considered Claimant's testimony in light of the other evidence of record, and found her statements regarding the degree of limitation from her pain and psychological issues to be less than credible. The ALJ sufficiently explained his reasoning and did not base his findings solely on a lack of objective evidence, but rather on Claimant's own reports to her treatment providers. *See Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (concluding that "evidence of pain intensity cannot be discounted solely based on objective medical findings" and the ALJ must "explain in his decision what statements by [the claimant] undercut her subjective evidence of pain intensity as limiting her functional capacity."). Accordingly, the ALJ's credibility assessment provides no basis for remand.

### 2. The Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to

the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2

(E.D.N.C. Sept. 24, 2013) (citations omitted).

Claimant contends that the ALJ erred in weighing the opinion evidence by giving less weight to the opinions of Erin Eves, Claimant's treating nurse practitioner, and Dr. Clark, an examining consultant, and giving significant weight to the non-examining state agency reviewers, resulting in an RFC that overstates Claimant's abilities. Pl.'s Mem. [DE-20] at 8–12.

### i. Ms. Eves' Opinion

On October 22, 2015, Ms. Eaves provided a medical source statement regarding Claimant's mental impairments. (R. 570–73). Ms. Eaves indicated by check mark on a form that Claimant experienced generalized persistent anxiety, but did not mark several symptoms Claimant reported at the administrative hearing, including pervasive loss of interest in almost all activities, difficulty concentrating, and recurrent severe panic attacks. (R. 570). She also indicated Claimant had mild restriction in activities of daily living, moderate difficulty in maintaining social functioning, that "[d]eficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)" were absent, repeated episodes of deterioration or decompensation in work or work-like settings were present, and the complete inability to function independently outside one's home due to panic attacks was absent. (R. 570–71). With respect to work limitations, Ms. Eves noted Claimant could understand, remember, and carry out short simple instructions, was moderately impaired in her ability to maintain attention and concentration for extended periods, perform tasks within a schedule, interact appropriately with the public, maintain socially appropriate behavior, and set realistic goals or make plans independently. (R. 571–72). However, she found Claimant to be markedly impaired in her ability to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers without distracting

them, and to respond appropriately to changes in the work setting. (R. 572).

The ALJ summarized Ms. Eves' opinion and gave it partial weight, explaining that "Ms. Eves is not a medically acceptable source and while many of the limitations are generally consistent with the medical record as a whole, the marked limitations are too restrictive given that same medical evidence." (R. 24). According to the regulations, a nurse practitioner is not considered an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Even so, "evidence from other sources" may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d); *see also* S.S.R. 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (explaining that opinions from "other [medical] sources . . . may provide insight into the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to function").[4] As other medical sources "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians," their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 WL 2329939, at *3. Nevertheless, "only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." *Id.* at *2 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Therefore, the ALJ appropriately considered that Ms. Eves was not an acceptable source in evaluating her opinion.

---

[4] This ruling was rescinded by Federal Register Notice Vol. 82, No. 57, page 15,263, effective for claims filed on or after March 27, 2017, and, therefore, still applies to the claim at issue. 82 Fed. Reg. 15,263 (Mar. 27, 2017).

Further, The ALJ did not discount Ms. Eves' opinion solely because she was not an acceptable medical source, as the ALJ also found the marked limitations Ms. Eves noted were inconsistent with the medical evidence. Consistency is an appropriate factor to consider when evaluating opinion evidence. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Craig*, 76 F.3d at 590 ("If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). Just prior to assessing the opinion evidence, the ALJ thoroughly discussed Claimant's treatment records, which he found demonstrated Claimant's psychological difficulties responded well to medication and therapy. (R. 23–24); (R. 527) (Sept. 2015 psychological treatment note indicating Claimant's medications were "working really well" and she "has energy, is able to concentrate, doesn't feel jittery, mood is good, really good. Doesn't need Klonopin anymore. Feels productive."); (R. 563) (Oct. 2015 psychological treatment note indicating that Claimant had recently experienced conflict with her family members that resulted in her being arrested and that her medications were working but the benefit was negated when dealing with her family).

It is apparent from the ALJ's decision what evidence he believed conflicted with Ms. Eves' opinion, distinguishing this case from *Lewis*, where the Fourth Circuit found error in the ALJ's failure to explain the weight afforded to a treating physician's opinion because the decision left "impermissible gaps" when describing the opinions of the treating physician and the claimant's overarching medical history. 858 F.3d at 867–68; *see also Dunn v. Colvin*, 607 F. App'x 264, 276 (4th Cir. 2015) ("[T]he fact that the ALJ could have offered a more thorough explanation for his decision does not change our conclusion that substantial evidence in the record supports that decision."). This case is also distinguishable from *Radford v. Colvin*, because here the ALJ provided

14

a sufficient explanation for giving less weight to the examining sources and more weight to state agency reviewers. 734 F.3d at 295–96 (4th Cir. 2013). The ALJ's RFC is for the most part consistent with Ms. Eves' opinion. The ALJ accounted for Claimant's moderate limitations in concentration and social functioning by limiting her to simple, routine, and repetitive tasks but not at a production rate pace, simple work-related decisions, few if any changes in the routine work setting, and occasional interaction with the public, coworkers, and supervisors (R. 18), and the ALJ sufficiently explained why he did not fully credit the opinion. Accordingly, the ALJ's evaluation of this opinion provides no basis for remand.

### ii. Dr. Clark's Opinion

Dr. Clark performed a consultative examination on October 2, 2014 (R. 338–41), and made the following assessment:

> A 51-year-old with a history, she states of rheumatoid arthritis with a family history, had knee pain that accelerated through the years to where she had knee replacement five years ago with a good result and has lumbar spine pain on a daily basis, limiting her walking one block, standing 20 minutes, sitting 30 minutes, only can sleep in two hour intervals. She has some decreased range of motion. It is worse with cold and wet weather, worse with activity. She has to pace herself when she does the household chores. She also gets weakness and numbness, she states to left leg more than the right leg, has had cortisone injections in her ileotibial band, gets headaches on a fours-time a week basis, perhaps migraine, perhaps tension. Also, has depression and anxiety and is on the combination of Cymbalta and clonazepam. No psychiatric admissions, has never been suicidal. She did work up until about 6 months ago apparently as a waitress at Chili's. I do not know if a psychiatric assessment is intended or not. She has apparently a history of hyperthyroidism that has not been fully treated as of yet. Her musculoskeletal areas have limitation by way of range of motion cervical spine, lumbar spine and some intermittent numbness to hands, which may indeed be mild carpal tunnel syndrome. She has had a right knee total replacement. She has crepitance to both knees and some persistent pain to both knees.

(R. 341). The ALJ gave Dr. Clark's opinion little weight because it was "vague, not expressed in

15

vocationally relevant terms, and appears too reliant on the claimant's subjective complaints rather than objective findings." (R. 25).

Claimant contends Dr. Clark's opinion that she could walk one block, stand for 20 minutes, and sit for 30 minutes was specific and vocationally relevant. Pl.'s Mem. [DE-16] at 11. However, these were not Dr. Clark's opinions, but rather him recounting what Claimant reported she was able to do. At the outset of his report and again in the review of symptoms, Dr. Clark recounted Claimant's problems as she related them, including that she can walk a block, stand for 20 minutes, sit for 30 minutes, and sleep in two hour increments. (R. 338–39). Dr. Clark merely restated this information in the assessment concluding his report, along with other historical information as reported by Claimant. (R. 341). Dr. Clark then reported his examination findings. *Id.* The ALJ did not err in discounting Dr. Clark's opinion as merely reflective of Claimant's subjective complaints, and, in fact, it is questionable whether Dr. Clark's statement even qualifies as a medical opinion under the regulations. Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect *judgments* about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (emphasis added). Therefore, "[o]nly those statements . . . that reflect judgments regarding a claimant's prognosis or limitations, or the severity of symptoms," and not those which merely report subjective complaints of the claimant's pain, constitute medical opinions as defined in the regulations. *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5366967, at *11 (E.D.N.C. Aug. 30, 2013) (citations omitted), *adopted by* 2013 WL 5350870 (Sept. 24, 2013). Dr. Clark's statement provides no "judgments"

16

about Claimant's impairments, but rather merely reflects Claimant's subjective statements and Dr. Clark's examination findings. Accordingly, the ALJ's decision to give Dr. Clark's "opinion" little weight provides no basis for remand.

### 3. Obesity

Under Social Security Ruling 02-1p, obesity will be considered in determining whether a claimant has a medically determinable impairment; whether the impairment is severe; whether the impairment meets or equals a listing; and whether the impairment prevents the claimant from doing work. S.S.R. 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002). At step two, the ALJ determined that Claimant's obesity was a severe impairment. (R. 15). At step three, the ALJ stated that there was no listing for obesity, but that he considered its impact—specifically "the impact on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the work environment"—at each step of the adjudication process. (R. 16). Claimant contends the ALJ erred in failing to consider the impact of her obesity on her ability to do work. Pl.'s Mem. [DE-16] at 12–13. However, Claimant points to no evidence that would indicate her abilities were limited by her obesity to a greater extent than found by the ALJ in the RFC, and no such evidence is apparent on review of the treatment notes or opinion evidence. This distinguishes the case from *Sellars v. Colvin*, where the court found inadequate an analysis similar to that here, but in *Sellars* there was evidence in the record that the claimant's obesity caused chronic abdominal pain. No. 7:15-CV-124-FL, 2016 WL 4083376, at *6 (E.D.N.C. Aug. 1, 2016); *see also Wright v. Colvin*, No. 5:14-CV-479-FL, 2015 WL 5714918, at *5 (E.D.N.C. Sept. 29, 2015) (rejecting argument that the ALJ failed to properly account for obesity in the RFC where the impact of the claimant's obesity was discussed minimally in the medical records). Accordingly, under the

17

circumstances, the ALJ's analysis of Claimant's obesity provides no basis for remand.

In sum, the ALJ appropriately considered Claimant's testimony, her treatment records, and the opinion evidence in formulating the RFC. The records reflect that Claimant believed she could not return to her past physically demanding work as a restaurant server, and the ALJ agreed, explaining that "her past job does not best serve her physical and mental needs at this point." (R. 24). However, considering all the evidence in the record, the ALJ determined that Claimant's pain was managed with medication and her psychological impairments responded well to both medication and therapy; thus, he concluded she was "not limited to the extent that she is precluded from all basic unskilled work" (R. 24), and this determination is supported by substantial evidence. Claimant's argument that the ALJ misapplied the Medical Vocational Guidelines (the "Grids") is premised on Claimant being limited to sedentary work. Pl.'s Mem. [DE-16] at 9–10. Because the ALJ's determination that Claimant can perform a reduced range of light work is supported by substantial evidence, the ALJ did not err in failing to find Claimant was disabled under the Grids.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-15] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-20] be ALLOWED, and the final decision of the Commissioner be affirmed.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 28, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or

modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 14 day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge